In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-20-00259-CR
_____

### JORDAN JOSEPH BROUSSARD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause No. B200176-R**

### MEMORANDUM OPINION

Jordan Joseph Broussard (Broussard or Appellant) was indicted for aggravated robbery. *See* Tex. Penal Code Ann. § 29.03. Broussard entered a plea of "guilty" and elected to have the trial court determine his punishment in open sentencing. After a sentencing hearing in which the State presented witnesses and Broussard testified on his own behalf, the trial court accepted Broussard's guilty plea, found Broussard guilty of aggravated robbery based on his plea of guilty, and

1

assessed punishment at twenty-five years of confinement. Broussard filed a notice

of appeal and raises two issues on appeal. We affirm the trial court's judgment.

## Background

At the plea hearing,[1] the trial judge called the case and the following exchange

occurred:

> THE COURT: …The case is set for a plea today. The court is
> conducting this proceeding through a video teleconference as ordered
> by the Supreme Court of Texas and the Court of Criminal Appeals. It's

---

[1] When the hearing occurred, the Supreme Court of Texas's *Eighteenth Emergency Order Regarding the COVID-19 State of Disaster*, 609 S.W.3d 122 (Tex. 2020) provided, that in relevant part:

[] Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:
. . . .
[] allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means;
[] consider as evidence sworn statements made out of court or sworn testimony given remotely, out of court, such as by teleconferencing, videoconferencing, or other means[.]
. . . .
[] Courts must not conduct in-person proceedings contrary to the *Guidance for All Court Proceedings During COVID-19 Pandemic* ("Guidance") issued by the Office of Court Administration, which may be updated from time to time, regarding social distancing, maximum group size, and other restrictions and precautions. Prior to holding any in-person proceedings, a court must submit an operating plan that is consistent with the requirements set forth in the Guidance. Courts must continue to use all reasonable efforts to conduct proceedings remotely.
*See* 609 S.W.3d at 122-23.

being done through the Zoom platform. Present in the video courtroom [are] myself, the court reporter and court coordinator, the prosecutor, the defense attorney, and the defendant.

. . . .

For some reason, Mr. Broussard, your audio wasn't connecting; but what we have is your lawyer has you on the telephone. He has you on speaker. So when you speak, we can hear you and you can hear us. So, it's kind of a workaround; but you can see and hear and we can see and hear you. Is that okay?

THE DEFENDANT: Yeah.

THE COURT: Now, if you - -

THE DEFENDANT: Yes, sir.

THE COURT: - - if you have any objection to the way we're doing it by video teleconference, I can reset it; and we can do it in the courtroom. So, this appears to me to be working fine; but I want to confirm with you that you're okay with the way we're doing it.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. The proceedings are being streamed live through YouTube on the court's YouTube channel, which channel is identified on the court's web page, complying with the Open Courts Doctrine.

Broussard's counsel confirmed that Broussard waived arraignment and the reading of the indictment, and Broussard testified that he signed a waiver of jury trial.

Broussard then entered his "guilty" plea:

THE COURT: To the offense of aggravated robbery as alleged in the indictment, do you plead guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty, Mr. Broussard, of your own free will?

3

THE DEFENDANT: Yes, sir.

THE COURT: Did anybody threaten you or promise anything to force you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty because you really are guilty?

THE DEFENDANT: Yes.

THE COURT: Did you understand the paperwork that you signed?

THE DEFENDANT: Yes. We went over it. Yes, sir.

THE COURT: I'm going to - - I'll touch on the high points. I know [defense counsel] went over it with you. By signing the papers, in addition to giving up the right to a jury trial, you're giving up the right to have the witnesses appear against you, to be confronted by the witnesses, to look at them while they testify and to have your lawyer cross-examine the witnesses. Do you understand you are giving up those rights?

THE DEFENDANT: Yeah.

THE COURT: And do you understand, Mr. Broussard, the range of punishment for the crime that you're pleading guilty to?

THE DEFENDANT: Yes, sir.

THE COURT: It's a first-degree felony, which means the range is not less than 5 years in prison nor more than 99 years in prison or life and up to a $10,000 fine. That's the range for a first-degree felony. Do you understand that range?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand the indictment alleges use of a firearm, if . . . my memory is serving me. . . .
[Defense Counsel]: That's correct, your Honor. Yes, sir.

4

THE COURT: So, if you are sentenced to a term of years in prison, Mr. Broussard, because of the firearm, you'll have to serve one half of that prison sentence day for day without good-time credit before you can be considered for parole. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Just to illustrate, if you were sentenced to 10 years in prison, you would serve 5 calendar years before the parole board could consider letting you out on parole. Do you understand that illustration?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: So, you understand there's no plea bargain in this case.

THE DEFENDANT: There's no plea bargain.

. . . .

THE COURT: Okay. So, it's what's called an "open plea." It's open - -

THE DEFENDANT: Yeah, open.

THE COURT: - - because there's - - there's no agreement between you and the prosecutor.

THE DEFENDANT: Right.

THE COURT: And if the State - - if the prosecutor made a plea offer to you, you've chosen not to accept a plea bargain that was offered; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand that it could turn out better than what they offered you.

THE DEFENDANT: Yes, sir.

5

. . . .

THE COURT: But you understand it could also turn out worse.

THE DEFENDANT: Yes, sir.

THE COURT: And whatever the State may have offered, that becomes irrelevant on an open plea. It's only - -

THE DEFENDANT: Right.

THE COURT: - - relevant what I think is a fair and just punishment in the case. Do you understand?

THE DEFENDANT: Yes, sir.

Broussard was sworn in and agreed to the judicial confession he signed. The trial court then admitted the State's evidence, and after both sides rested, the trial court ordered a pre-sentence investigation report be prepared and scheduled the date for the sentencing hearing.

The trial court explained to Broussard as follows:

The case is set for sentencing on September 18, 2020, at 1:30 p.m. You will - - you are required to appear physically at the 163rd District Court courtroom for that sentencing. That does not mean - - some people will appear by Zoom. There's a camera set up, a microphone set up. You have to physically be at the courthouse for sentencing.
Your attorney has the option of being there or appearing by Zoom; and if he appears by Zoom and y'all need to talk privately, I can put you into a breakout room where the rest of the people in the courtroom - - the virtual courtroom can't see or hear y'all.

Broussard then stated on the record that he had no questions regarding the sentencing hearing procedure as explained by the trial court.

6

At the sentencing hearing,[2] the trial court called the case and explained that the court was conducting the proceeding through video teleconference as ordered by the Court of Criminal Appeals and the Texas Supreme Court and it was being conducted on the Zoom platform. The trial judge stated on the record that present in the virtual courtroom were himself, the court reporter, the court coordinator, the

---

[2] When the sentencing hearing occurred, the Supreme Court's *Twenty-Sixth Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 135 (Tex. 2020)applied and provided, , in relevant part:

> [] Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:
> . . . .
> 　　[] except as this Order provides otherwise, allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means;
> 　　[] consider as evidence sworn statements made out of court or sworn testimony given remotely, out of court, such as by teleconferencing, videoconferencing, or other means[.]
> . . . .
> [] Courts must not conduct in-person proceedings contrary to the *Guidance for All Court Proceedings During COVID-19 Pandemic* ("Guidance") issued by the Office of Court Administration, which may be updated from time to time, regarding social distancing, maximum group size, and other restrictions and precautions. Prior to holding any in-person proceedings, a court must submit an operating plan that is consistent with the requirements set forth in the Guidance. Courts must continue to use all reasonable efforts to conduct proceedings remotely.

609 S.W.3d at 135-36. Only "remote jury proceedings" in criminal cases required "appropriate waivers and consent obtained on the record from the defendant and the prosecutor." *See id.* at 137.

prosecutor, defense counsel, and Broussard, and that Broussard was physically present in the 163rd District courtroom and also appearing by Zoom. The trial court also explained that the proceedings were being streamed live on the court's YouTube channel in compliance with the Open Courts Doctrine. The trial court took judicial notice of the contents of the court's file, including the presentence report.

The State presented testimony at the hearing from a witness who testified he was shopping at the EZ Pawn Store in Orange, Texas, when he heard a "bashing noise" and saw one man bashing the jewelry case with a hammer and another man holding a pistol and blocking the door. He testified that the customers and managers who were inside the store were scared. Officer Justin Kirkpatrick with the City of Orange Police Department also testified for the State. According to Officer Kirkpatrick, he was within a mile of the EZ Pawn Store when he received a call regarding a potential robbery in progress. As he approached an alley near the EZ Pawn Store he saw a dark-colored car occupied by two black males and it appeared that they were taking off their clothing. He then observed the vehicle gain speed, he activated his lights and attempted to conduct a stop, but the vehicle accelerated. Officer Kirkpatrick continued to pursue the vehicle, which ultimately stopped, and the two occupants jumped out of the vehicle and fled on foot. At some point, one of the subjects gave up and the other suspect jumped a fence. The subject that finally surrendered was the passenger. He told Officer Kirkpatrick his name was Broussard.

8

A white pillowcase, which police recovered from the floorboard of the passenger's side of the vehicle, contained a large amount of jewelry. According to Officer Kirkpatrick, other officers apprehended the second suspect. Officer Kirkpatrick testified that Broussard admitted in his statement to Detective Steele that Broussard's cousin, Elijah Traylor, picked Broussard up and drove him to the EZ Pawn Store in Orange and Broussard willingly held a gun given to him by Traylor and watched the door while his cousin Traylor robbed the EZ Pawn Store. Broussard also testified on his own behalf. He testified that he had never been arrested, that his involvement was out of character for him, that he did not know why he let his cousin talk him into committing the crime, that he gave a statement to police admitting his involvement in the crime, that he took responsibility for his involvement in the crime, and that he was remorseful.

After closing arguments, the trial court accepted Broussard's "guilty" plea, found Broussard guilty of aggravated robbery based on his plea of "guilty," and assessed punishment at twenty-five years of confinement. Broussard appealed and then filed a motion for new trial. The record does not reflect that Broussard requested or obtained a hearing on his motion, which was overruled by operation of law.

## Issues on Appeal

In issue one, Broussard argues he was denied the effective assistance of counsel. In his second issue, Broussard argues "[f]undamental error occurred when

9

the trial was conducted by electronic technology in the absence of the physical presence of the parties, defense counsel, the prosecutor, and the trial judge."

## Ineffective Assistance of Counsel

Broussard contends in his first issue that he had ineffective assistance of counsel. According to Broussard, his counsel failed to adequately communicate with him, promised him probation, misled him regarding the substance of the proceedings, and was physically absent from the courtroom during the court proceedings and only appeared via remote technology.

With respect to an ineffective assistance claim, our review of counsel's performance is highly deferential, and we make a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). To overcome that presumption, Appellant must satisfy the two prongs established by *Strickland v. Washington* by demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see also Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (adopting and applying the Strickland test). "Unless [an] appellant can prove both prongs, an appellate court must not find counsel's

representation to be ineffective." *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687). The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption. *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). Allegations of ineffectiveness must be shown in the record, and the record must affirmatively establish the alleged ineffectiveness. *See id.* Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial regarding trial counsel's alleged errors to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

11

"To show prejudice, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (quoting *Strickland*, 466 U.S. at 694).

A defendant is entitled under the Sixth Amendment to effective assistance of counsel in guilty-plea proceedings. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). A guilty plea may be considered involuntary due to ineffective assistance of counsel. *Ex parte Moussazadeh*, 361 S.W.3d 684, 688-89, 691-92 (Tex. Crim. App. 2012) (counsel's advice regarding parole eligibility was deficient); *Harrington*, 310 S.W.3d at 458-59. "Competent counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case." *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009) (citation omitted). A defendant must demonstrate that but for the erroneous advice of counsel, he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that the two-part *Strickland* test applies to guilty pleas); *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999) (citations omitted).

Before accepting a guilty plea, a trial court is required to admonish a defendant of the applicable range of punishment of the crime. Tex. Code Crim. Proc. Ann. art. 26.13(a)(1). "No plea of guilty…shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." *Id.* art. 26.13(b). In admonishing the defendant, "substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." *Id.* art. 26.13(c). The trial court may make the admonishments orally or in writing. *Id.* art. 26.13(d). In this case, the trial court did both.

Complaints of a failure to adequately communicate, and being misled about probation and regarding the substance of the proceedings

On appeal and in his motion for new trial, Broussard argues his trial attorney was ineffective because he had limited communications with Broussard, he misled Broussard into believing that he would receive probation if he pleaded guilty, he misled Broussard into believing that he was going to court for a pretrial hearing for probation, and he misled Broussard into acquiescing to questions asked of him at the proceeding in order to get probation. In support of these arguments, Broussard relies on his own affidavit attached to his motion for new trial. An affidavit attached to a motion for new trial is not evidence and it must be presented at a hearing on the motion and admitted into evidence to be considered on appeal. *See Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009); *see also Lamb v. State*, 680 S.W.2d

13

11, 13 (Tex. Crim. App. 1984) ("Motions for new trial are not self-proving. They must be supported by affidavits and the affidavits must be offered into evidence.") (internal citations omitted); *Jackson v. State*, 139 S.W.3d 7, 20 (Tex. App.—Fort Worth 2004, pet. ref'd) (quoting *Stephenson v. State*, 494 S.W.2d 900, 909-10 (Tex. Crim. App. 1973)) (explaining that an affidavit attached to a motion for new trial is merely "'a pleading that authorizes the introduction of supporting evidence' and is not evidence itself.").

There is no indication in our appellate record that the trial court held an evidentiary hearing on the motion for new trial. Nothing in the record reflects that trial counsel ever had an opportunity to testify as to his communications with Broussard. With a silent record, we must presume that counsel's conduct falls within the wide range of reasonable representation. *See Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

The written plea admonishments signed by Broussard stated that he was charged with the first-degree felony offense of aggravated robbery and faced a term of life or any term of not more than 99 years or less than 5 years in TDCJ and a fine not to exceed $10,000. In the Defendant's Stipulations, Waivers and Judicial Confession signed by Broussard, he stated that he understood the court's plea admonishments, he was aware of the consequences of his plea, he judicially confessed to committing aggravated robbery as charged in the indictment or

14

information, and he admitted he was guilty as charged. The Punishment Recommendations in the record were signed by Broussard in which he agreed there was no agreed punishment recommendation. At the plea hearing, the trial court orally admonished Broussard, and Broussard agreed that no one promised him anything in return for his guilty plea, that his guilty plea was made of his own free will and because he was guilty, that he understood the rights he was giving up like the right to confront witnesses and a right to a jury trial, that he understood the range of punishment he was facing, and that because it was an open plea the trial court could sentence him to up to life in prison.

Broussard has failed to point to any evidence in the record that he was misled, or that he did not want to plead guilty, nor has he demonstrated to this Court that he received ineffective assistance of counsel. Broussard has also failed to demonstrate a reasonable probability that, but for counsel's alleged errors, the outcome would have been different. *See Bone*, 77 S.W.3d at 833. Broussard must demonstrate that but for the erroneous advice of counsel, he would not have pled guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 58-59 (holding that the two-part *Strickland* test applies to guilty pleas); *Moody*, 991 S.W.2d at 857-58 (citations omitted). The record reflects that the court admonished Broussard and that he admitted he entered his plea freely and voluntarily. Broussard has not directed us to any evidence in the record to show that he did not want to plead guilty. He has not

shown this Court that but for counsel's alleged ineffectiveness, he would not have pleaded guilty, and there is nothing in the record before us to establish Appellant was misled by his trial counsel. *See Guidry v. State*, 177 S.W.3d 90, 94 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Powers v. State*, 727 S.W.2d 313, 316 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (a record devoid of any evidence that appellant was misled by his trial counsel provides no basis upon which an appellate court may act). Furthermore, Broussard has failed to show that additional communication between Broussard and his counsel would have changed the outcome of the proceeding. *See Bone*, 77 S.W.3d at 833.

Complaint About His Attorney Being Physically Absent From the Courtroom And Appearing Via Remote Technology

Next, Broussard argues his counsel was ineffective because Broussard "appeared for the proceedings in the physical absence of his counsel [and,] [e]ven with the attempt at remote technological assistance, [Broussard] was left incommunicado in the courtroom without any lawyer during a significant portion of the proceedings." At the plea hearing, neither Broussard nor his attorney made any objection to the plea hearing being held via videoconference despite being given an opportunity to object and having the option to have the hearing in the courtroom instead of via remote technology. At the end of the plea hearing, the trial court advised Broussard that at the sentencing hearing his counsel had the option of appearing by Zoom, and if counsel appeared by Zoom and they needed to talk

16

privately, the trial court could put them in a breakout room where the rest of the virtual courtroom could not see or hear Broussard and his counsel. For the reasons explained above, we conclude that the record is silent regarding the reasoning of his attorney, and Broussard has failed to show that the outcome would have changed if he and his attorney had been present together in the courtroom rather than appearing virtually. *Id*.

We overrule Broussard's first issue.

Constitutional Claims

In his second issue, Broussard argues "[f]undamental error occurred when the trial was conducted by electronic technology in the absence of the physical presence of the parties, defense counsel, the prosecutor, and the judge." Broussard argues that the proceedings being conducted by remote electronic means pursuant to orders of the Texas Supreme Court and the Texas Court of Criminal Appeals in response to the COVID-19 pandemic denied him his "Sixth Amendment right to counsel, his right of confrontation, and his Fifth and Fourteen Amendment rights to due process" because he was unable "to reasonably confer, be prepared for, and participate in the conduct of his trial."

In support of his arguments, Broussard relies on his affidavit attached to his motion for new trial. We have already explained that the affidavit was not admitted into evidence at the trial court and therefore we cannot consider it on appeal. *See*

17

*Rouse*, 300 S.W.3d at 762. Again, Broussard has failed to identify at any point in the record where he was denied the opportunity to speak with his attorney.

That said, Broussard places great emphasis on the pre-Covid19 Court of Criminal Appeals case of *Haggard v. State*, 612 S.W.3d 318 (Tex. Crim. App. 2020), in arguing that due process demands that the prosecutor, the State's witnesses against Broussard, the Judge, and defense counsel be physically present at the sentencing hearing which he describes as his "trial." In *Haggard*, a sexual assault nurse examiner who had moved out of state testified at trial via FaceTime over defense objections because she claimed that traveling back to Texas was inconvenient. 612 S.W.3d at 323-34. The Court of Criminal Appeals stated that since the decision in *Maryland v. Craig*, 497 U.S. 836 (1990), the Court of Criminal Appeals has required a "case specific" "necessity finding in every case in which [it has] considered a Confrontation Clause challenge to the cross-examination of a witness via two-way video system." *Id.* at 325. In *Haggard*, the trial court heard no evidence and made no case-specific finding before it allowed the SANE witness to testify via remote technology, and the Court concluded that it did "not think it is an important public policy to allow the State to procure a witness's testimony remotely when the State had sufficient time and ability to subpoena the witness, and the witness was available to appear and testify, but the State chose not to." *Id.* at 327. According to the Court, the "right to physical, face-to-face confrontation" protected by the Confrontation

18

Clause "cannot be so readily dispensed with based on the mere inconvenience to a witness." *Id.* at 328.

Recently, in *Jones v. State*, Nos. 05-21-00019-CR & 05-21-00021-CR, 2022 Tex. App. LEXIS 1892 (Tex. App.—Dallas Mar. 23, 2022, no pet. h.) (mem. op., not designated for publication), the appellant relied on *Haggard* in arguing that he was denied his Sixth Amendment right to confront adverse witnesses when the State's witnesses testified via Zoom under a COVID-19 order which was in effect. *See* 2022 Tex. App. LEXIS 1892, **10-11. The Dallas Court of Appeals concluded that unlike *Haggard*, the record did not reflect that the appellant made any complaint about the remote nature of the proceeding. *See id.* at *11. The Dallas Court determined that it did not read *Haggard* to abrogate the preservation requirement because in *Haggard* not only did the defendant object to the remote testimony and the court did not address waiver, but also the cases on which *Haggard* relied involved trial court rulings over defense objections. *See id.* at *11. In *Jones*, the Dallas Court held that the appellant failed to preserve error because he did not object to the remote testimony of any of the State's witnesses. *See id.* at **11-12 (citing Tex. R. App. P. 33.1(a)(1)(A); *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) ("Confrontation claims are subject to this preservation requirement."); *Oliver v. State*, No. 03-19-00725-CR, 2020 Tex. App. LEXIS 6872, at **3-5 (Tex. App.—Austin Aug. 27, 2020, pet. ref'd) (mem. op., not designated for publication)

(concluding appellant's confrontation complaint about witnesses testifying via teleconference was not preserved for appellate review when appellant did not raise complaint in trial court); *Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd) ("[T]he right of confrontation is a forfeitable right—not a waivable-only right—and must be preserved by a timely and specific objection at trial.")). Here, Broussard did not make any objection to the Zoom proceedings in general or to the remote testimony given by the State's witnesses during the sentencing hearing.

Broussard also relies on *Davis v. State*, 195 S.W.3d 311 (Tex. App.—Houston [14th Dist.] 2006, no pet.), in arguing that the absence of defense counsel except by Zoom in essence "shackled" Broussard in his ability to confer with counsel during critical stages of the proceedings. In *Davis*, a jury trial, counsel instructed the defendant to communicate with him in writing to avoid trial distraction and to avoid calling the jury's attention to their communication. 195 S.W.3d at 317. When the trial judge ordered that defendant be handcuffed, he also instructed the bailiff to remove from the defendant's hand the pen his attorney had given him to write notes. *See id.* The Fourteenth Court of Appeals concluded that the defendant's communication with his attorney was in fact hindered. *See id.* Unlike the facts in *Davis*, we have no evidence in our record indicating that Broussard's ability to communicate with his attorney was in fact hindered.

20

In the recent case of *Hughes v. State*, No. 14-20-00628-CR, 2022 Tex. App. LEXIS 1725 (Tex. App.—Houston [14th Dist.] Mar. 15, 2022, pet. filed), the Fourteenth Court examined a Zoom proceeding in a motion to adjudicate guilt. In *Hughes*, the trial court held a hearing on the State's motion to adjudicate guilt and, although defense counsel was present in the courtroom, the prosecutor, the witnesses, and Appellant attended via Zoom. 2022 Tex. App. LEXIS 1725, at *2. The trial court stated the defendant was on "'video in the jail and the reason he is not here in court is because he has been exposed to COVID-19 and may have even tested positive for it but those are people who are on the list not to come to court and are prohibited from coming to court for – because the administration is afraid they could expose other people to the virus.'" *Id.* At the hearing, the defendant tried to speak or interject during witness testimony and the State's closing argument, but the trial court instructed the defendant be muted. *Id.* The defendant was not given an opportunity to speak or communicate during the hearing except for when he testified in his defense and at the conclusion of the hearing the trial court adjudicated the defendant guilty and sentenced him to ten years of incarceration. *Id.* at **2-3. On appeal, the defendant argued that he was denied his right to be present in the courtroom during the revocation hearing and that, absent a waiver by him, a trial court has an independent duty to secure a defendant's presence in the courtroom for his revocation hearing. *Id.* at **8-9.

21

The Fourteenth Court of Appeals, in a 2-1 decision, determined that the Sixth Amendment right to be present to confront and cross-examine witnesses is a right that, absent a waiver by the defendant, must be implemented by a trial court and that failure to do so can be challenged on appeal regardless of whether it was first urged in the trial court. *See id.* at *16. Although the Court concluded the defendant could challenge on appeal whether the trial court erred in securing his presence via Zoom instead of his physical presence in the courtroom because he did not waive his right to be present, the Court declined to reach the issue of whether a defendant is present at a proceeding under the Sixth Amendment if he is present via video conference. *See id.* at **16-17. The Court determined that the defendant was not truly present at his hearing for Sixth Amendment purposes because he was in a separate breakout room with no possibility to communicate with his counsel in private regarding how to confront and cross-examine the State's sole witness as envisioned by the Confrontation Clause. *See id.* at *17. The Court concluded that "under the circumstances of this particular case, the trial court violated Appellant's Sixth Amendment right to be present to confront and cross-examine witnesses." *See id.* at **17-18.

Here, Broussard was present in the courtroom during his sentencing but he complains that his counsel, the prosecutor, and the presiding judge were not physically present with him in the courtroom. Like *Jones*, Broussard was physically

22

in the court room for his sentencing and Broussard did not object to the remote nature of the proceedings. *See Jones*, 2022 Tex. App. LEXIS 1892, at \*\*11-12. Unlike *Hughes*, Broussard was physically present in the courtroom for sentencing, Broussard does not claim that he was not "present" at trial, and the record lacks any suggestion that the trial court denied any opportunity for him to interject or speak with his counsel. *See Hughes*, 2022 Tex. App. LEXIS 1725, at \*\*2, 17. Unlike *Hughes* and *Davis*, the trial court here facilitated and explained to Broussard at the plea hearing the procedure that would be used at the sentencing hearing and the record indicates the trial court gave Broussard an opportunity to privately confer with his attorney in a breakout room.

We disagree with Broussard's description on appeal that he was unable to confer with counsel at the time of the hearing because "unknown to defendant, the hearing was to be conducted by Zoom technology." The trial court fully explained the Zoom procedure to Broussard before the hearing began. Broussard never made a complaint to the trial court about being unable to speak to his attorney and nothing in the record indicates he was denied an opportunity to participate or to speak with his attorney. Broussard has not established why he could not have used the breakout procedure identified by the trial court or why such procedure was insufficient. The trial court at the plea proceeding explained to Broussard that he would have to physically appear in the courtroom for sentencing, that some participants may appear

23

by Zoom, and if his attorney chose to appear by Zoom and they needed to talk privately the trial court would put them in a breakout room where the rest of the virtual courtroom could not hear or see them. Broussard responded that he did not have any questions about the procedure. Although Broussard alleges on appeal that "[w]hen the court was in recess prior to sentencing, appellant was left in the courtroom with no ability to communicate with counsel in any way[,]" Broussard has failed to provide a cite to the record for that allegation. Nothing in our record shows that he ever had difficulty conferring with counsel, that he was not given the opportunity to participate in the proceedings, or that he ever made his complaints known to the trial court. We overrule Appellant's second issue.

We affirm the trial court's judgment.

AFFIRMED.

 

 

_____
LEANNE JOHNSON
Justice

Submitted on February 1, 2022
Opinion Delivered June 8, 2022
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.